IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE,                                    )
                                             )
         Plaintiff,                          )
                                             )
    v.                                       )   Civ. No. 09-00498
                                             )
UNITED STATES CENTRAL                        )
INTELLIGENCE AGENCY, and                     )
DEFENSE INTELLIGENCE AGENCY,                 )
                                             )
         Defendants.                         )
_____)

DECLARATION OF LINDA J. DOVE
DIRECTORATE OF SUPPORT INFORMATION REVIEW OFFICER,
CENTRAL INTELLIGENCE AGENCY

I, LINDA J. DOVE, hereby declare and say:

1. I am the Information Review Officer ("IRO") for the Directorate of Support ("DS") of the Central Intelligence Agency ("CIA" or "Agency"). I have held this position since July 2005. I have served with the CIA for approximately twenty-two years and, in addition to my current position, have held other supervisory positions with the CIA in the field of information review and release.

2. The Directorate of Support is the CIA's administrative and support arm. Components within the DS provide the CIA with a foundation of mission-critical services, including the protection of CIA personnel, information, facilities,

technology, and communications. It also is responsible for the management of CIA's financial operations, medical services, personnel resources, communication services, facilities and logistics, and technology development.

3. As the Directorate of Support Information Review Officer ("DS/IRO"), I am responsible for both protection and review of documents originated by the DS or otherwise implicating DS interests when such documents are the subject of court proceedings or access requests from the public. As part of my official duties, I ensure that any determinations as to the release or withholding of such information are proper and do not jeopardize DS interests.

4. As a senior CIA official under a written delegation of authority pursuant to section 1.3(c) of Executive Order 12958, as amended, I hold original classification authority at the TOP SECRET level.[1] Therefore, I am authorized to make original classification and declassification decisions. My original classification and declassification authority extends to all CIA information within the purview of the DS.

5. Through the exercise of my official duties, I am familiar with this civil action. I make the following

---

[1] Executive Order 12958 was amended by Executive Order 13292. See Exec. Order No. 13,292, 68 Fed. Reg. 15,315 (Mar. 28, 2003). All citations to Executive Order 12958 are to the Order as amended by Executive Order 13292. See Exec. Order No. 12958, 3 C.F.R. 333 (1995), reprinted as amended in 50 U.S.C.A. § 435 note at 193 (West Supp. 2009).

statements based upon my personal knowledge and information made available to me in my official capacity.

## I. FACTUAL BACKGROUND AND PURPOSE OF DECLARATION

6. On 16 March 2009 Plaintiff brought suit against the CIA and Defense Intelligence Agency ("DIA") pursuant to the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act, 5 U.S.C. § 552.

7. During the course of processing Plaintiff's request, DIA located one document containing CIA-originated information, which it coordinated with the CIA.[2]

8. On 24 November 2009, the CIA entered into a Stipulation of Settlement with Plaintiff in the above-captioned matter. Pursuant to that Stipulation of Settlement, CIA provided to Doe a summary of derogatory information maintained in the official files of the Office of Security.

9. Because Plaintiff and DIA failed to settle the case, the single DIA coordination document still is at issue in this litigation.

10. The purpose of this Declaration is to explain and justify, to the extent possible on the public record, the CIA's withholding determinations with respect to CIA information in

---

[2] A "coordination" refers to the process required when an agency ("first agency") receiving a FOIA request finds a second agency's information in a document originated by the first agency. The first agency then consults, or "coordinates" with the second agency to ensure that the second agency's equities are properly protected. After having coordinated with the second agency, the first agency responds directly to the requester.

3

the single DIA coordination document. Although I understand that the DIA declaration addresses the CIA's withholdings for the document, I am submitting this Declaration to explain and justify the CIA's withholding determinations, in light of the Stipulation of Settlement.

II. **CIA INFORMATION IN DEFENSE INTELIGENCE AGENCY DOCUMENT**

11. As noted above, during the course of this litigation, the DIA located one document that was prepared by DIA but contained information it had obtained from CIA. I understand that DIA refers to that document as "Document 33" in this litigation, and that DIA addresses its FOIA and PA withholdings in its submissions to the Court.

12. I have determined that the CIA information contained in Document 33 is exempt from release pursuant to FOIA exemptions (b)(3), and, in part, (b)(1) and (b)(7)(E). The CIA information is also exempt from release pursuant to Privacy Act exemptions (j)(1), and, in part, (k)(1) and (k)(6).

13. *FOIA Exemption (b)(3)/PA Exemption (j)(1)* - Release of CIA-originated information in the DIA document would reveal intelligence methods used by CIA to carry out its responsibilities. Generally, intelligence methods are the means by which, and the manner in which, an intelligence agency accomplishes its mission. Most organized professions or businesses employ methods that are common to and, in some cases,

unique to that business or profession to accomplish their goals and objectives. Certain methods used in the conduct of intelligence activities provide them with a special character that necessitates protecting the details of their use.

14. For instance, Document 33 reveals methods by which CIA determines suitability for employment. The document reveals what specific information -- out of the totality of information contained within Plaintiff's files -- was deemed so significant by a CIA officer that it warranted passage to a sister intelligence agency in response to that agency's request. Additionally, the CIA-originated information in Document 33 also sheds light on the information available to CIA when it revoked Plaintiff's conditional offer of employment.

15. Foreign intelligence services and terrorist organizations scour the public sector for officially released information and have the capacity and ability to gather information from myriad sources, including from individuals, analyze it, and deduce means to detect, evaluate, penetrate, or counter the activities of the CIA, from disparate and even seemingly unimportant details. What may seem trivial to the uninformed may appear of great moment to one who has a broad view of the scene and may put the information in context.

16. Once the nature of a CIA intelligence method or details regarding the CIA's use of the intelligence method in a

certain situation is revealed, its continued successful use is in jeopardy and its future value is compromised because hostile intelligence services could easily neutralize or manipulate it.

17. Detailed knowledge of the methods by which CIA determines suitability for employment would be of material assistance to those who would seek to penetrate the CIA. Accordingly, any information that would reveal this methodology must be protected and this information is exempt from disclosure pursuant to FOIA exemption (b)(3) and Privacy Act exemption (j)(1). The CIA also asserts FOIA exemption (b)(3) and Privacy Act exemption (j)(1) to protect from release certain CIA organizational information.

18. As is discussed in more detail below, the information that is exempt from release under FOIA exemption (b)(3) and Privacy Act exemption (j)(1) is protected from disclosure under the National Security Act of 1947, 50 U.S.C. § 403-1, as amended, and the Central Intelligence Agency Act of 1949 ("CIA Act"), 50 U.S.C. § 403g, as amended.

19. *FOIA Exemption (b)(1)/PA Exemption (k)(1)* - I also determined that certain information in Document 33 reveals specific details regarding the CIA's use of the polygraph as an intelligence method, something that is currently and properly classified at the SECRET level.

6

20.  Detailed knowledge of how CIA uses the polygraph as an intelligence method would be of material assistance to those who would seek to penetrate the CIA; therefore, any information that would reveal this methodology must be protected.  Accordingly, this information is exempt pursuant to FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  As an intelligence method, this information is coextensively exempt from release pursuant to FOIA exemption (b)(3) and Privacy Act exemption (j)(1).

21.  *FOIA Exemption (b)(7)(E)/PA Exemption (k)(6)* - Finally, I have determined that DIA Document 33 contains CIA information about CIA investigative techniques and procedures that is exempt from disclosure pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (k)(6), which I discuss further below.  The release of that information would expose aspects of the CIA's procedures for vetting potential candidates' backgrounds that would compromise the objectivity and weaken the effectiveness of the procedures in the future. Specifically, this information provides insight into the CIA's administration and use of the polygraph and reveals information about the subject matter.

### III.  FOIA/PRIVACY ACT EXEMPTIONS CLAIMED BY CIA
A.  FOIA EXEMPTION (B)(3)/PRIVACY ACT EXEMPTION (J)(1)

22.  As mentioned above, Document 33 includes CIA organizational information.  It also contains information about

intelligence methods: specifically, the intelligence methods employed by CIA to screen applicants; to determine suitability and qualification for employment as an intelligence officer; and its use of the polygraph as an intelligence method. Both of these overlapping categories of information are exempt from disclosure pursuant to FOIA exemption (b)(3) and Privacy Act exemption (j)(1).

23. Specifically, FOIA exemption (b)(3) states that the FOIA does not apply to matters that are:

> Specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

24. I determined that the National Security Act, 50 U.S.C. § 403-1, as amended, and the Central Intelligence Agency Act of 1949 ("CIA Act"), 50 U.S.C. § 403g, as amended, are the withholding statutes applicable to this case.

25. Section 6 of the CIA Act, 50 U.S.C. § 403g, as amended, provides that the CIA shall be exempt from any provision of any law requiring the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the CIA. The Director of CIA has implemented section (j)(1) of the Privacy Act by promulgating 32 C.F.R. 1901.62(d)(1), which "exempt[s] from

access by individuals under section (d) of the Act those portions and only those portions of all systems of records maintained by the CIA that: (1) Consist of, pertain to, or would otherwise reveal intelligence sources and methods."

26. Section 102A(i)(1) of the National Security Act, as amended, requires the protection of intelligence sources and methods. Disclosure of exempt information withheld from Document 33, as detailed above, would reveal information about CIA intelligence methods. Accordingly, such information is within the category that the National Security Act mandates be protected.

27. In contrast to Executive Order 12958, as amended, the National Security Act's statutory requirement to protect intelligence methods does not require the CIA to identify or describe the damage to national security that reasonably could be expected to result from their unauthorized disclosure. Likewise, the CIA Act's statutory protection of information revealing the organization, functions and other information about the CIA is absolute: it does not require any showing of harm.

B. **FOIA EXEMPTION (B)(1)/PRIVACY ACT EXEMPTION (K)(1): CURRENTLY AND PROPERLY CLASSIFIED INFORMATION**

28. FOIA exemption (b)(1) provides that FOIA does not require disclosure of information that is: "(A) specifically

authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."[3]

29.   Privacy Act exemption (k)(1), 5 U.S.C. § 552a(k)(1), states that the head of an agency may promulgate rules to exempt any system of records within that agency from, among other things, section (d) of the Privacy Act, if the system of records is subject to the provisions of FOIA exemption (b)(1).

30.   By promulgating 32 C.F.R. 1901.63(a), the Director of CIA has exercised the authority provided by section (k) of the Privacy Act to exempt any portion of a system of records maintained by the CIA that "would consist of, pertain to, or otherwise reveal information" that is classified pursuant to Executive order.  As a result, section (d) of the Privacy Act, which provides individuals with the rights to request access to and amendment of any information pertaining to them, does not apply to any part of a system of records maintained by the CIA that would consist of, pertain to, or otherwise reveal classified information.  Therefore, CIA may rely on Privacy Act exemption (k)(1) to protect classified information from release to a Privacy Act requester to the same extent that FOIA

---

[3] 5 U.S.C. § 552(b)(1) (2000).

exemption (b)(1) applies to protect the information from release under the FOIA.

31. The authority to classify information is derived from a succession of Executive orders, the most recent of which is Executive Order 12958.

32. Executive Order 12958 establishes three levels of classification for national security information. Information shall be classified TOP SECRET if its unauthorized disclosure reasonably could be expected to cause *exceptionally grave damage* to the national security; SECRET if its unauthorized disclosure reasonably could be expected to cause *serious damage* to the national security; and CONFIDENTIAL if its unauthorized disclosure reasonably could be expected to cause *damage* to the national security.

33. Section 1.4 of Executive Order provides information shall not be considered for classification unless it concerns, *inter alia*, "intelligence activities (including special activities), intelligence sources or methods, or cryptology." The CIA-originated information that CIA withheld from Document 33 pursuant to FOIA exemption (b)(1) and Privacy Act exemption (k)(1), as indicated above, concerns CIA intelligence methods, the disclosure of which would compromise these methods and could reasonably be expected to cause serious damage to the national security.

34. The information that CIA withheld from Document 33 pursuant to FOIA exemption (b)(1) and Privacy Act exemption (k)(1) is currently and properly classified SECRET and marked in accordance with Executive Order 12958, as amended. No information has been classified in order to conceal violations of law; inefficiency or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security.

35. In sum, I have determined that certain information withheld from Document 33 is currently and properly classified SECRET in accordance with the substantive and procedural requirements of Executive Order 12958, as amended. As an intelligence method, this information is coextensively exempt from production pursuant to FOIA exemption (b)(3) and Privacy Act exemption (j)(1), as was further discussed above.

C. <u>FOIA EXEMPTION (B)(7)(E): SECURITY PROCESS INFORMATION</u>

36. FOIA exemption (b)(7)(E) authorizes the withholding of:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .
> (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or

prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

37.  As explained above, Document 33 contains information that provides insight into the CIA's administration and use of the polygraph.

38.  Certain aspects of security investigations conducted to assess applicants for CIA employment inherently relate to law enforcement.  The information withheld from Document 33 on the basis of FOIA exemption (b)(7)(E) is information compiled for such law enforcement purposes that would provide insight into CIA's clearance and investigatory processes.  Should this information be released, it reasonably could be expected to compromise the objectivity and weaken the effectiveness of the CIA's techniques and procedures for vetting the background and other security information of potential candidates, thus enabling those who would seek to circumvent the CIA's procedures.  Accordingly, because the release of the withheld information would disclose CIA investigatory techniques and procedures and compromise their continued effectiveness, the CIA properly invoked FOIA exemption (b)(7)(E).  This information is co-extensively exempt from disclosure pursuant to Privacy Act exemptions (j)(1) and (k)(6).

D. PRIVACY ACT EXEMPTION (K)(6): MATERIAL USED TO DETERMINE EMPLOYMENT QUALIFICATIONS

39. Section (k) of the Privacy Act authorizes the head of any agency to promulgate rules to exempt from certain provisions of the Privacy Act,

> (6) testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service the disclosure of which would compromise the objectivity or fairness of the testing or examination process.

The Director of the CIA has promulgated 32 C.F.R. 1901.63(f), which exempts such records from section (d) of the Privacy Act. Such records are, therefore, exempt from disclosure under the Privacy Act.

40. To release Document 33 would reveal information that provides insight into the CIA's administration and use of the polygraph and information about the subject matter. Release of such information would compromise the ability to use this intelligence method as a part of the procedures for determining eligibility and suitability for employment with CIA. Disclosure of this information reasonably could be expected to compromise the objectivity and effectiveness of these techniques and procedures.

* * * *

41. I conducted a line-by-line review of the CIA information in Document 33 with the aim of identifying all

14

meaningful, reasonably segregable, non-exempt portions so that all such portions could be released. My review determined that CIA information in Document 33 must be withheld in its entirety because it contains no meaningful, reasonably segregable, non-exempt information.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of December, 2009.

*Linda J. Dove*
Linda J. Dove
Information Review Officer,
Directorate of Support,
Central Intelligence Agency